IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **In Re:** | : | Case No. 20-51888 |
| **TRAXIUM, LLC,** | : | Chapter 11 |
| **Debtor.** | : | Hon. Alan M. Koschik |
| | : | Evidentiary Hearing and Limited Discovery Requested |
| | : | |

**CENPRAA'S OBJECTION TO CONFIRMATION OF DEBTOR'S
THIRD AMENDED DISCLOSURE STATEMENT AND PLAN**

Now comes CENPRAA Inc. by and through its counsel and respectfully submits its Objection to the proposed Confirmation of (consolidated) Debtor's Third Amended (Disclosure) Plan as set forth in the following:

I. Brief Summary

Notwithstanding the hearing on the Debtor's 'First Amended Disclosure Statement and Plan'; and, indeed Debtor's Second and now Third versions not much has fundamentally changed vis. the several prior submissions and the present amendment. Indeed, in some respects the Third Amendment has gone backwards and proposes an even more speculative adventure; again, unsupported by any substantive information upon which a creditor can make a reasoned evaluation of the proposals.

In addition, to the extent that the Third Amended submissions are substantially similar to the First and Second Amended submissions, CENPRAA reiterates its prior Objections to avoid textual

1

repetition herein; while expressly reserving its right to supplement this Objection for good cause shown.

1. The Amended Submissions in Brief

The Third Amended Plan is , for practical purposes, entirely speculative and fundamentally doomed from the start; indeed while the new submissions purport to 'increase' the payout to unsecured creditors to "100%" that promise is flawed because; as a threshold matter:

(i) The Debtor proposes that there will be no payments until the end of 2022; a time period in which *no payments* will be made to unsecured creditors and excepting the speculative projections; there are no substantive assurances that in December of 2022 the Creditors will actually start to receive payments; or that the Debtors will even survive for the ten years contemplated in the Plan.

(ii) During the first several after confirmation, the Debtor has committed to spend *$2,600,000.00* on legal and administrative expenses; a substantial part of which is for proposed litigation against the "Watt/Gergen Kellum" parties and CENPRAA; the outcomes of which are highly speculative; and can also subject Debtors to substantially adverse offsetting claims and/or de novo claims against the assets of the Estates

(iii) There is no explanation as to how the Debtors have apparently found and budgeted *$2,600,000.00* to be spent in the first four years of the Plan to chase speculative claims against 'Watt' and CENPRAA which may or may not yield a nickel. This is *one million dollars more* than the First Amended submission which similarly proposed litigation against Watt and CENPRAA.

In summary, instead of using a substantial part of the budgeted $2,600,000.00 of income from operations to pay general creditors from day one after confirmation, and resolve the critical CENPRAA claims; Debtors have instead proposed to defer payments to the creditors until 2022 and

2

spend that money on speculative litigation and ongoing legal fees; including prosecuting claims (George and Tina Schmutz) that do not even belong to the Debtors absent the confirmation of a Plan..

II.  The Plan does not comply with the requirements of 11USC 1129 (a)(4) because it was not proposed in good faith.

(i) There are material misstatements of fact in the First, Second, and Third Amended Disclosure (and Plan) with respect to the pending Adversary (Case No. 21-05050) which demonstrates that the outcome claimed by CENPRAA therein would result in the forfeiture of the ownership of Traxium by George and Tina Schmutz and vesting exclusive ownership and control in CENPRAA

(ii) The proposal in the Plan to permit /accept the 'assignment' of any claims or defenses of George and Tina Schmutz asserted in the Adversary to the Debtor constitutes a bad faith attempt by the Debtor to shield the Schmutz's from the risk of the Adversary proceeding; and (i) no benefit to the Debtor is explained in any manner; and (ii) such conduct would expose the Debtor to substantial post-confirmation claims by CENPRAA

(a) The proposal to 'transfer' the above claims to state court and litigate such there is not possible because the parties and claims are presently situated in this Court's parallel jurisdiction in the Adversary

(b) Any such claims are compulsory counterclaims in the Adversary and which were not asserted by the Schmutz's and are therefore deemed waived.

(iii) The 'litigation' proposed in the Plan does not even rise to the level of speculation; and notably is proposed against two of the Debtor's most significant unsecured creditors; who are

seeking to obtain payment of defaulted purchase money obligations entered into by Traxium; and in the instance of CENPRAA, independently and unconditionally guaranteed by George and Tina Schmutz.

(iv) Despite the case being filed in 2020, the Debtor has done nothing to pursue obvious insider claims against George and Tinas Schmutz

(a) The Debtor again barely addresses these matters: "The Debtor has not completed the investigation into ...." these matters, and it is obvious why: Most of such matters were directly or indirectly beneficial to George and Tina Schmutz as set forth in CENPRAA's prior Objections; briefly but not inclusive (i) use of at least $40,000.00 of Traxium funds to buy a personal residence for Tina Schmutz (ii) the use of Traxium credit cards for at least $200,000.00 of the Schmutz's personal expenses in the @3 years prior to the filing (iii) payment of disproportionate salaries to George Schmutz and Tina Schmutz ; and in the latter instance, for no work at Traxium at all (iv) the grant of a third mortgage on the Serendipity property to Fifth Third by George Schmutz as its sole member

III.  The Debtor's 'Liquidation Analysis' is Devoid of Support

The purported 'liquidation analysis' is not supported by any appraisals, despite such having been purportedly done by Fifth Third. Indeed, the 'values' are apparently extracted from the books of the entities and appear to represent the 'depreciated' book value.

In summary, the 'Liquidation Analysis " again provides no real information whatsoever which would allow the creditors and this Court to make a reasoned decision as to the viability of a Plan.

IV. The Plan is not Feasible

Briefly, the Plan is not feasible because it is complete depends of the occurrence of events beyond the reasonable control of the Debtor.

(i) The continued existence of Traxium post confirmation and its 'control' by George and Tina Schmutz is unconditionally dependent upon the Schmutz's complete victory in the Adversary; which will not be adjudicated prior to the proposed approval of the Plan

(ii) The proposed 'equity contribution' to the plan by the purported post plan owners is simply nonsensical; the Debtors have inflated George Schmutz's compensation 'pre-petition' and reduced it in the Plan to somehow show 'equity' having been contributed. This is illusory as the prior compensation was not fundable by Traxium without improperly diverting funds from secured and unsecured creditors. Briefly, if this fiction is allowed, why not add in the credit card charges and home purchases and thus increase 'compensation' even more to provide even more 'equity'

(iii) The Debtor's , even post -petition have continued to fail to pay priority tax claims financial reporting is inconsistent with reality , indeed the cumulative losses as of the 9.31.2021 Monthly Operating Reprot are over $500,000.00 and this has occurred despite the infusion of over $1.4m in PPP money; and available cash; $163,000.00 barely funds a couple of week's operations.

(iv) The 'logic' of allocating $2,400,000.00 in hourly legal fees for litigation against "Watt' and possibly "CENPRAA" is not in touch with reality; particularly since the maximum claims identified total only an extraordinarily speculative $3m.; with no allowance for litigation risk , delay, disruption, or possible damaging countersuits, not feasible nor proposed in good faith.

Notable as well, as no resources of the Debtor can be expended in the Adversary between the Schmutz's and CENPRAA which if successful and obtains relief pursuant to the guarantees,

5

pledges, proxies, and securitizations; then CENPRAA will control Traxium and there will be no need to spend @ $2,000,000.00+ in operating revenue for legal fees which will be available to unsecured creditors.

In summary, until this Court addresses the matter of the Schmutz's and their independent obligations to CENPRAA in the Adversary; there can no reasonable or practical discussions or the confirmation of the Plan until these critical flaws are dealt with as a threshold matter.

V.  Summary and Conclusions

As noted above, the proposed Plan absent the ownership issue, is substantially unsupported, speculative, and/or incomplete as set forth below:

1. CENPRAA's success in the Adversary would remove the present ownership and management and thus any Disclosure and Plan could require restructuring by new management.

2. CENPRAA as the ownership and management of the Debtor would potentially free up over $4,000,000.00 in funds for creditors; and could also include a more disinterested investigation into conveyances, preferences, insiders, and subordinations for the benefit of all creditors; and would similarly neutrally evaluate a going business sale as an alternative.

3. The complexity and substantially conflicting positions and purported evidence asserted to be relevant to confirmation are properly subject to evidentiary hearing and limited discovery ; not disposition on counsel's arguments. Therefore CENPRAA respectfully requests that the matter of confirmation be subjected to a full evidentiary hearing and that limited and appropriate discovery be permitted upon leave of Court

In conclusion, CENPRAA respectfully submits that the Third Amended Plan as submitted is again materially deficient and should be rejected by the Court as such. And, as a threshold matter

forward, the CENPRAA claims against the Schmutz's must be adjudicated in an Adversary as this case cannot proceed with the ownership of Traxium and management's authority to operate at issue.

Respectfully submitted,

/s/ Robert W. McIntyre
ROBERT W. McINTYRE (0006768)
6105 Parkland Boulevard, Suite 100
Cleveland, Ohio 44124
(440) 446-1100 – Phone
(440) 446-1240 – Fax
rmcintyre@dhplaw.com
Attorney for CENPRAA LLC

## CERTIFICATE OF SERVICE

I, Robert W. McIntyre, hereby certify that on the 11th day of November, 2021, this document was filed through the ECF system and will be sent electronically to all parties via the Court's electronic filing system.

Kate M. Bradley, Esq.
kate.m.bradley@usdoj.gov
*Office of the United States Trustee*

Marc P. Gertz, Esq.
mpgertz@gertzrosen.com
*Proposed Counsel for the Debtor and Debtor in Possession*

Scott N. Schaeffer, Esq.
scott@ksrlegal.com
*Counsel for Fifth Third Bank, N.A.*

Peter G. Tsarnas, Esq.
ptsarnas@gertzrosen.com
*Proposed Counsel for the Debtor and Debtor in Possession*

/s/ Robert W. McIntyre
ROBERT W. McINTYRE (0006768)
Attorney for CENPRAA LLC